IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| | | |
|---|---|---|
| Peter Joseph Riley, | ) | Civil Action No. 8:16-cv-00352-JDA |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **ORDER** |
| | ) | |
| Nancy A. Berryhill[1], | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the Court for a final Order pursuant to Local Civil Rules 73.02(B)(1) and 83.VII.02, D.S.C.; 28 U.S.C. § 636(c); the parties' consent to disposition by a Magistrate Judge [Doc. 7]; and the Order of reference signed by the Honorable Margaret B. Seymour on February 18, 2016 [Doc. 10]. Plaintiff brought this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) to obtain judicial review of a final decision of the Commissioner of Social Security ("the Commissioner"), denying Plaintiff's claim for supplemental security income ("SSI").[2] For the reasons set forth below, the decision of the Commissioner is affirmed.

---

[1] On January 20, 2017, Nancy A. Berryhill became the Acting Commissioner of Social Security.

[2] Section 1383(c)(3) provides, "The final determination of the Commissioner of Social Security after a hearing under paragraph (1) shall be subject to judicial review as provided in section 405(g) of this title to the same extent as the Commissioner's final determinations under section 405 of this title." 42 U.S.C. § 1383(c)(3).

<u>**PROCEDURAL HISTORY**</u>

On February 7, 2012, Plaintiff filed an application for SSI, alleging disability beginning October 15, 2008. [R. 165–74.] The claim was denied initially and on reconsideration by the Social Security Administration ("the Administration"). [R. 83–85, 102–03, 106–09, 111–12.] Plaintiff requested a hearing before an administrative law judge ("ALJ"), and on May 15, 2014, ALJ Robert C. Allen held a hearing on Plaintiff's claim. [R. 38–66.]

The ALJ issued a decision on June 27, 2014, finding Plaintiff not disabled under the Social Security Act ("the Act"). [R. 26–37.] At Step 1,[3] the ALJ found Plaintiff had not engaged in substantial gainful activity since February 7, 2012, the application date. [R. 28, Finding 1.] At Step 2, the ALJ found Plaintiff had the following severe impairments: coronary artery disease, congestive heart failure, generalized anxiety disorder, and affective disorder. [R. 28, Finding 2.] The ALJ also found Plaintiff had non-severe impairments of hypertension and hyperlipidemia, which were effectively treated and controlled with medication. [R. 28.] At Step 3, the ALJ found Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the impairments listed at 20 C.F.R. Part 404, Subpart P, Appendix 1. [R. 28, Finding 3.] The ALJ specifically considered Listings 4.02, 4.04, 4.05, 12.02, 12.04, 12.05, and 12.06. [R. 28–29.]

Before addressing Step 4, Plaintiff's ability to perform his past relevant work, the ALJ found Plaintiff retained the following residual functional capacity ("RFC"):

---

[3]The five-step sequential analysis used to evaluate disability claims is discussed in the Applicable Law section, *infra*.

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 416.967(a) except with the following limitations: He cannot climb ladders, ropes, or scaffold. He can occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl. He should avoid concentrated exposure to heat, cold, and humidity as well as odors, dusts, gases, and fumes. He should avoid unprotected heights and dangerous machinery. He is limited to simple unskilled work that does not involve more than occasional contact with the general public.

[R. 29, Finding 4.] Based on this RFC, the ALJ determined at Step 4 that Plaintiff was unable to perform his past relevant work as a painter [R. 35, Finding 5]; however, based on his age, education, work experience, RFC, and vocational expert testimony, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform [R. 35, Finding 9]. On this basis, the ALJ found Plaintiff had not been under a disability, as defined in the Act, since February 7, 2012, the date the application was filed. [R. 36, Finding 10.]

Plaintiff requested Appeals Council review of the ALJ's decision but the Council declined. [R. 1–6. ] Plaintiff filed this action for judicial review on February 4, 2016. [Doc. 1.]

## THE PARTIES' POSITIONS

Plaintiff contends the ALJ's decision is not supported by substantial evidence and should be remanded because the ALJ failed to consider Plaintiff's medication side effects and/or failed to find that Plaintiff's medication side effects are severe impairments, failed to accord proper weight to the opinions of Plaintiff's treating physicians Drs. Abdulla Abdulla and Fredric Woriax, and failed to properly assess Plaintiff's credibility. [Doc. 15.] The Commissioner, on the other hand, contends the ALJ's decision is supported by

substantial evidence and that substantial evidence supports the ALJ's consideration of the side effects of Plaintiff's medication, the ALJ assigned the proper weight to the medical opinions, and the ALJ properly evaluated and considered Plaintiff's credibility.  [Doc. 16.]

## STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla—i.e., the evidence must do more than merely create a suspicion of the existence of a fact and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966) (citing *Woolridge v. Celebrezze*, 214 F. Supp. 686, 687 (S.D.W. Va. 1963))("Substantial evidence, it has been held, is evidence which a reasoning mind would accept as sufficient to support a particular conclusion.  It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance.  If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'").

Where conflicting evidence "allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the [Commissioner's] designate, the ALJ)," not on the reviewing court.  *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996); *see also  Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991) (stating that where the Commissioner's decision is supported by substantial evidence, the court will affirm, even if the reviewer would have reached a contrary result as finder of fact and even if the reviewer finds that the evidence preponderates against the

Commissioner's decision). Thus, it is not within the province of a reviewing court to determine the weight of the evidence, nor is it the court's function to substitute its judgment for that of the Commissioner so long as the decision is supported by substantial evidence. *Laws*, 368 F.2d at 642; *Snyder v. Ribicoff*, 307 F.2d 518, 520 (4th Cir. 1962).

The reviewing court will reverse the Commissioner's decision on plenary review, however, if the decision applies incorrect law or fails to provide the court with sufficient reasoning to determine that the Commissioner properly applied the law. *Myers v. Califano,* 611 F.2d 980, 982 (4th Cir. 1980); *see also Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994). Where the Commissioner's decision "is in clear disregard of the overwhelming weight of the evidence, Congress has empowered the courts to modify or reverse the [Commissioner's] decision 'with or without remanding the cause for a rehearing.'" *Vitek v. Finch*, 438 F.2d 1157, 1158 (4th Cir. 1971) (quoting 42 U.S.C. § 405(g)). Remand is unnecessary where "the record does not contain substantial evidence to support a decision denying coverage under the correct legal standard and when reopening the record for more evidence would serve no purpose." *Breeden v. Weinberger*, 493 F.2d 1002, 1012 (4th Cir. 1974).

The court may remand a case to the Commissioner for a rehearing under sentence four or sentence six of 42 U.S.C. § 405(g). *Sargent v. Sullivan*, 941 F.2d 1207 (4th Cir. 1991) (unpublished table decision). To remand under sentence four, the reviewing court must find either that the Commissioner's decision is not supported by substantial evidence or that the Commissioner incorrectly applied the law relevant to the disability claim. *See, e.g.*, *Jackson v. Chater*, 99 F.3d 1086, 1090–91 (11th Cir. 1996) (holding remand was appropriate where the ALJ failed to develop a full and fair record of the claimant's residual

functional capacity); *Brehem v. Harris*, 621 F.2d 688, 690 (5th Cir. 1980) (holding remand was appropriate where record was insufficient to affirm but was also insufficient for court to find the claimant disabled). Where the court cannot discern the basis for the Commissioner's decision, a remand under sentence four may be appropriate to allow the Commissioner to explain the basis for the decision. *See Smith v. Heckler*, 782 F.2d 1176, 1181–82 (4th Cir. 1986) (remanding case where decision of ALJ contained "a gap in its reasoning" because ALJ did not say he was discounting testimony or why); *Gordon v. Schweiker*, 725 F.2d 231, 235 (4th Cir. 1984) (remanding case where neither the ALJ nor the Appeals Council indicated the weight given to relevant evidence). On remand under sentence four, the ALJ should review the case on a complete record, including any new material evidence. *See Smith*, 782 F.2d at 1182 ("The [Commissioner] and the claimant may produce further evidence on remand."). After a remand under sentence four, the court enters a final and immediately appealable judgment and then loses jurisdiction. *Sargent*, 941 F.2d 1207 (citing *Melkonyan v. Sullivan*, 501 U.S. 89, 102 (1991)).

In contrast, sentence six provides:

> The court may . . . at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding . . . .

42 U.S.C. § 405(g). A reviewing court may remand a case to the Commissioner on the basis of new evidence only if four prerequisites are met: (1) the evidence is relevant to the determination of disability at the time the application was first filed; (2) the evidence is material to the extent that the Commissioner's decision might reasonably have been different had the new evidence been before him; (3) there is good cause for the claimant's

failure to submit the evidence when the claim was before the Commissioner; and (4) the claimant made at least a general showing of the nature of the new evidence to the reviewing court. *Borders v. Heckler*, 777 F.2d 954, 955 (4th Cir. 1985) (citing 42 U.S.C. § 405(g); *Mitchell v. Schweiker*, 699 F.2d 185, 188 (4th Cir. 1983); *Sims v. Harris*, 631 F.2d 26, 28 (4th Cir. 1980); *King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979)), *superseded by amendment to statute*, 42 U.S.C. § 405(g), *as recognized in Wilkins v. Sec'y, Dep't of Health & Human Servs.*, 925 F.2d 769, 774 (4th Cir. 1991).[4]  With remand under sentence six, the parties must return to the court after remand to file modified findings of fact. *Melkonyan*, 501 U.S. at 98.  The reviewing court retains jurisdiction pending remand and does not enter a final judgment until after the completion of remand proceedings.  *See Allen v. Chater*, 67 F.3d 293 (4th Cir. 1995) (unpublished table decision) (holding that an order remanding a claim for Social Security benefits pursuant to sentence six of 42 U.S.C. § 405(g) is not a final order).

## APPLICABLE LAW

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a

---

[4]Though the court in *Wilkins* indicated in a parenthetical that the four-part test set forth in *Borders* had been superseded by an amendment to 42 U.S.C. § 405(g), courts in the Fourth Circuit have continued to cite the requirements outlined in *Borders* when evaluating a claim for remand based on new evidence.  *See, e.g.*, *Brooks v. Astrue*, No. 6:10-cv-152, 2010 WL 5478648, at *8 (D.S.C. Nov. 23, 2010); *Ashton v. Astrue*, No. TMD 09-1107, 2010 WL 3199345, at *3 (D. Md. Aug. 12, 2010); *Washington v. Comm'r of Soc. Sec.*, No. 2:08-cv-93, 2009 WL 86737, at *5 (E.D. Va. Jan. 13, 2009); *Brock v. Sec'y of Health & Human Servs.*, 807 F. Supp. 1248, 1250 n.3 (S.D.W. Va. 1992).  Further, the Supreme Court of the United States has not suggested *Borders*' construction of § 405(g) is incorrect. *See Sullivan v. Finkelstein*, 496 U.S. 617, 626 n.6 (1990).  Accordingly, the Court will apply the more stringent *Borders* inquiry.

disability. 42 U.S.C. § 423(a). "Disability" is defined as:

> the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 consecutive months.

*Id.* § 423(d)(1)(A).

## I.    The Five Step Evaluation

To facilitate uniform and efficient processing of disability claims, federal regulations have reduced the statutory definition of disability to a series of five sequential questions. *See, e.g.*, *Heckler v. Campbell*, 461 U.S. 458, 461 n.2 (1983) (noting a "need for efficiency" in considering disability claims). The ALJ must consider whether (1) the claimant is engaged in substantial gainful activity; (2) the claimant has a severe impairment; (3) the impairment meets or equals an impairment included in the Administration's Official Listings of Impairments found at 20 C.F.R. Pt. 404, Subpt. P, App. 1; (4) the impairment prevents the claimant from performing past relevant work; and (5) the impairment prevents the claimant from having substantial gainful employment. 20 C.F.R. § 416.920. Through the fourth step, the burden of production and proof is on the claimant. *Grant v. Schweiker*, 699 F.2d 189, 191 (4th Cir. 1983). The claimant must prove disability on or before the last day of her insured status to receive disability benefits. *Everett v. Sec'y of Health, Educ. & Welfare*, 412 F.2d 842, 843 (4th Cir. 1969). If the inquiry reaches step five, the burden shifts to the Commissioner to produce evidence that other jobs exist in the national economy that the claimant can perform, considering the claimant's age, education, and

work experience.  *Grant*, 699 F.2d at 191.  If at any step of the evaluation the ALJ can find an individual is disabled or not disabled, further inquiry is unnecessary.  20 C.F.R. § 416.920(a)(4); *Hall v. Harris*, 658 F.2d 260, 264 (4th Cir. 1981).

### A.    *Substantial Gainful Activity*

"Substantial gainful activity" must be both substantial—involves doing significant physical or mental activities, 20 C.F.R. § 416.972(a)—and gainful—done for pay or profit, whether or not a profit is realized, *id.* § 416.972(b).  If an individual has earnings from employment or self-employment above a specific level set out in the regulations, he is generally presumed to be able to engage in substantial gainful activity.  *Id.* § 416.974–.975.

### B.    *Severe Impairment*

An impairment is "severe" if it significantly limits an individual's ability to perform basic work activities.  *See id.* § 416.921.  When determining whether a claimant's physical and mental impairments are sufficiently severe, the ALJ must consider the combined effect of all of the claimant's impairments.  42 U.S.C. §§ 423(d)(2)(B), 1382c(a)(3)(G).  The ALJ must evaluate a disability claimant as a whole person and not in the abstract, having several hypothetical and isolated illnesses.  *Walker v. Bowen*, 889 F.2d 47, 49–50 (4th Cir. 1989) (stating that, when evaluating the effect of a number of impairments on a disability claimant, "the [Commissioner] must consider the combined effect of a claimant's impairments and not fragmentize them").  Accordingly, the ALJ must make specific and well-articulated findings as to the effect of a combination of impairments when determining whether an individual is disabled.  *Id.* at 50 ("As a corollary to this rule, the ALJ must

adequately explain his or her evaluation of the combined effects of the impairments."). If the ALJ finds a combination of impairments to be severe, "the combined impact of the impairments shall be considered throughout the disability determination process." 42 U.S.C. §§ 423(d)(2)(B), 1382c(a)(3)(G).

**C.** *Meets or Equals an Impairment Listed in the Listings of Impairments*

If a claimant's impairment or combination of impairments meets or medically equals the criteria of a listing found at 20 C.F.R. Pt. 404, Subpt. P, App.1 and meets the duration requirement found at 20 C.F.R. § 416.909, the ALJ will find the claimant disabled without considering the claimant's age, education, and work experience.[5] 20 C.F.R. § 416.920(a)(4)(iii), (d).

**D.** *Past Relevant Work*

The assessment of a claimant's ability to perform past relevant work "reflect[s] the statute's focus on the functional capacity retained by the claimant." *Pass v. Chater*, 65 F.3d 1200, 1204 (4th Cir. 1995). At this step of the evaluation, the ALJ compares the claimant's residual functional capacity[6] with the physical and mental demands of the kind of work he has done in the past to determine whether the claimant has the residual functional capacity to do his past work. 20 C.F.R. § 416.960(b).

---

[5]The Listing of Impairments is applicable to SSI claims pursuant to 20 C.F.R. §§ 416.911, 416.925.

[6]Residual functional capacity is "the most [a claimant] can still do despite [his] limitations." 20 C.F.R. § 416.945(a)(1).

### E. *Other Work*

As previously stated, once the ALJ finds that a claimant cannot return to her prior work, the burden of proof shifts to the Commissioner to establish that the claimant could perform other work that exists in the national economy. *See* 20 C.F.R. § 416.920(f)–(g); *Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992). To meet this burden, the Commissioner may sometimes rely exclusively on the Medical-Vocational Guidelines (the "grids"). Exclusive reliance on the "grids" is appropriate where the claimant suffers primarily from an exertional impairment, without significant nonexertional factors.[7] 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 200.00(e); *Gory v. Schweiker*, 712 F.2d 929, 930–31 (4th Cir. 1983) (stating that exclusive reliance on the grids is appropriate in cases involving exertional limitations). When a claimant suffers from both exertional and nonexertional limitations, the grids may serve only as guidelines. *Gory*, 712 F.2d at 931. In such a case, the Commissioner must use a vocational expert to establish the claimant's ability to perform other work. 20 C.F.R. § 416.969a; *see Walker*, 889 F.2d at 49–50 ("Because we have found that the grids cannot be relied upon to show conclusively that claimant is not disabled, when the case is remanded it will be incumbent upon the [Commissioner] to prove by expert vocational testimony that despite the combination of exertional and

---

[7]An exertional limitation is one that affects the claimant's ability to meet the strength requirements of jobs. 20 C.F.R. § 416.969a(a). A nonexertional limitation is one that affects the ability to meet the demands of the job other than the strength demands. *Id.* Examples of nonexertional limitations include but are not limited to difficulty functioning because of being nervous, anxious, or depressed; difficulty maintaining attention or concentrating; difficulty understanding or remembering detailed instructions; difficulty seeing or hearing. 20 C.F.R. § 416.969a(c)(1).

nonexertional impairments, the claimant retains the ability to perform specific jobs which exist in the national economy."). The purpose of using a vocational expert is "to assist the ALJ in determining whether there is work available in the national economy which this particular claimant can perform." *Walker*, 889 F.2d at 50. For the vocational expert's testimony to be relevant, "it must be based upon a consideration of all other evidence in the record, . . . and it must be in response to proper hypothetical questions which fairly set out all of claimant's impairments." *Id.* (citations omitted).

## II.    Developing the Record

The ALJ has a duty to fully and fairly develop the record. *See Cook v. Heckler*, 783 F.2d 1168, 1173 (4th Cir. 1986). The ALJ is required to inquire fully into each relevant issue. *Snyder*, 307 F.2d at 520. The performance of this duty is particularly important when a claimant appears without counsel. *Marsh v. Harris*, 632 F.2d 296, 299 (4th Cir. 1980). In such circumstances, "the ALJ should scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts, . . . being especially diligent in ensuring that favorable as well as unfavorable facts and circumstances are elicited." *Id.* (internal quotations and citations omitted).

## III.    Treating Physicians

If a treating physician's opinion on the nature and severity of a claimant's impairments is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record, the ALJ must give it controlling weight. 20 C.F.R. § 416.927(c)(2); *see Mastro v. Apfel*, 270

F.3d 171, 178 (4th Cir. 2001). The ALJ may discount a treating physician's opinion if it is unsupported or inconsistent with other evidence, i.e., when the treating physician's opinion does not warrant controlling weight, *Craig*, 76 F.3d at 590, but the ALJ must nevertheless assign a weight to the medical opinion based on the 1) length of the treatment relationship and the frequency of examination; 2) nature and extent of the treatment relationship; 3) supportability of the opinion; 4) consistency of the opinion with the record a whole; 5) specialization of the physician; and 6) other factors which tend to support or contradict the opinion, 20 C.F.R. § 416.927(c). Similarly, where a treating physician has merely made conclusory statements, the ALJ may afford the opinion such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments. *See Craig*, 76 F.3d at 590 (holding there was sufficient evidence for the ALJ to reject the treating physician's conclusory opinion where the record contained contradictory evidence).

In any instance, a treating physician's opinion is generally entitled to more weight than a consulting physician's opinion. *See Mitchell v. Schweiker*, 699 F.2d 185, 187 (4th Cir. 1983) (stating that treating physician's opinion must be accorded great weight because "it reflects an expert judgment based on a continuing observation of the patient's condition for a prolonged period of time"); 20 C.F.R. § 416.927(c)(2). An ALJ determination coming down on the side of a non-examining, non-treating physician's opinion can stand only if the medical testimony of examining and treating physicians goes both ways. *Smith v. Schweiker*, 795 F.2d 343, 346 (4th Cir. 1986). Further, the ALJ is required to review all of the medical findings and other evidence that support a medical source's statement that a

claimant is disabled.  20 C.F.R. § 416.927(d).  However, the ALJ is responsible for making the ultimate determination about whether a claimant meets the statutory definition of disability.  *Id.*

## IV.     Medical Tests and Examinations

The ALJ is required to order additional medical tests and exams only when a claimant's medical sources do not give sufficient medical evidence about an impairment to determine whether the claimant is disabled.  20 C.F.R. § 416.917; *see also Conley v. Bowen*, 781 F.2d 143, 146 (8th Cir. 1986).  The regulations are clear: a consultative examination is not required when there is sufficient medical evidence to make a determination on a claimant's disability.  20 C.F.R. § 416.917.  Under the regulations, however, the ALJ may determine that a consultative examination or other medical tests are necessary.  *Id.*

## V.     Pain

Congress has determined that a claimant will not be considered disabled unless he furnishes medical and other evidence (e.g., medical signs and laboratory findings) showing the existence of a medical impairment that could reasonably be expected to produce the pain or symptoms alleged.  42 U.S.C. § 423(d)(5)(A).  In evaluating claims of disabling pain, the ALJ must proceed in a two-part analysis.  *Morgan v. Barnhart,* 142 F. App'x 716, 723 (4th Cir. 2005) (unpublished opinion).  First, "the ALJ must determine whether the claimant has produced medical evidence of a 'medically determinable impairment which could reasonably be expected to produce . . . the actual pain, in the amount and degree,

alleged by the claimant.'" *Id.* (quoting *Craig*, 76 F.3d at 594).  Second, "if, and only if, the

ALJ finds that the claimant has produced such evidence, the ALJ must then determine, as

a matter of fact, whether the claimant's underlying impairment *actually* causes her alleged

pain."  *Id.* (emphasis in original) (citing *Craig*, 76 F.3d at 595).

Under the "pain rule" applicable within the United States Court of Appeals for the

Fourth Circuit, it is well established that "subjective complaints of pain and physical

discomfort could give rise to a finding of total disability, even when those complaints [a]re

not supported fully by objective observable signs."  *Coffman v. Bowen*, 829 F.2d 514, 518

(4th Cir. 1987) (citing *Hicks v. Heckler*, 756 F.2d 1022, 1023 (4th Cir. 1985)).  The ALJ

must consider all of a claimant's statements about his symptoms, including pain, and

determine the extent to which the symptoms can reasonably be accepted as consistent

with the objective medical evidence.  20 C.F.R. § 416.928.  Indeed, the Fourth Circuit has

rejected a rule which would require the claimant to demonstrate objective evidence of the

pain itself, *Jenkins v. Sullivan*, 906 F.2d 107, 108 (4th Cir. 1990), and ordered the

Commissioner to promulgate and distribute to all administrative law judges within the circuit

a policy stating Fourth Circuit law on the subject of pain as a disabling condition, *Hyatt v.

Sullivan*, 899 F.2d 329, 336–37 (4th Cir. 1990).  The Commissioner thereafter issued the

following "Policy Interpretation Ruling":

> This Ruling supersedes, only in states within the Fourth
> Circuit (North Carolina, South Carolina, Maryland, Virginia and
> West Virginia), Social Security Ruling (SSR) 88-13, Titles II
> and XVI: Evaluation of Pain and Other Symptoms:
> ...

**FOURTH CIRCUIT STANDARD:** Once an underlying physical or [m]ental impairment that could reasonably be expected to cause pain is shown by medically acceptable objective evidence, such as clinical or laboratory diagnostic techniques, the adjudicator must evaluate the disabling effects of a disability claimant's pain, even though its intensity or severity is shown only by subjective evidence. If an underlying impairment capable of causing pain is shown, subjective evidence of the pain, its intensity or degree can, by itself, support a finding of disability. Objective medical evidence of pain, its intensity or degree (i.e., manifestations of the functional effects of pain such as deteriorating nerve or muscle tissue, muscle spasm, or sensory or motor disruption), if available, should be obtained and considered. Because pain is not readily susceptible of objective proof, however, the absence of objective medical evidence of the intensity, severity, degree or functional effect of pain is not determinative.

SSR 90-1p, 55 Fed. Reg. 31,898-02, at 31,899 (Aug. 6, 1990). SSR 90-1p has since been superseded by SSR 96-7p, which is consistent with SSR 90-1p. *See* SSR 96-7p, 61 Fed. Reg. 34,483-01 (July 2, 1996). SSR 96-7p provides, "If an individual's statements about pain or other symptoms are not substantiated by the objective medical evidence, the adjudicator must consider all of the evidence in the case record, including any statements by the individual and other persons concerning the individual's symptoms." *Id.* at 34,485; *see also* 20 C.F.R. § 416.929(c)(1)–(c)(2) (outlining evaluation of pain).

## VI. Credibility

The ALJ must make a credibility determination based upon all the evidence in the record. Where an ALJ decides not to credit a claimant's testimony about pain, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding. *Hammond v. Heckler*, 765 F.2d 424, 426 (4th Cir. 1985). Although credibility determinations are generally left to the ALJ's discretion, such

determinations should not be sustained if they are based on improper criteria. *Breeden*, 493 F.2d at 1010 ("We recognize that the administrative law judge has the unique advantage of having heard the testimony firsthand, and ordinarily we may not disturb credibility findings that are based on a witness's demeanor. But administrative findings based on oral testimony are not sacrosanct, and if it appears that credibility determinations are based on improper or irrational criteria they cannot be sustained.").

## APPLICATION AND ANALYSIS

**Medication Side Effects**

Plaintiff argues that the ALJ failed to consider the side effects of Plaintiff's medications as a severe impairment and/or failed to consider the effects of his medications on his ability to sustain work. [Doc. 15 at 11–12.] The Commissioner contends, however, that substantial evidence supports the ALJ's consideration of the alleged side effects of Plaintiff's medications. [Doc. 16 at 7–10.]

In reaching a determination regarding a claimant's RFC, the ALJ must base the decision on "all of the relevant evidence in the case record," including side effects of medication. SSR 96-8P, 61 Fed. Reg. 34,474-01, at 34, 477 (July 2, 1996). The ALJ is not, however, required to accept unquestioningly all alleged side effects of medications; complaints of side effects may properly be discredited by inconsistent evidence, as long as the ALJ fully explains why the claimant's testimony should be discredited. *See Johnson v. Barnhart*, 434 F.3d 650, 658 (4th Cir. 2005) (relying upon the claimant's activities to discredit "allegedly disabling 'doped up' effect" of medication).

In the hearing before the ALJ, Plaintiff testified that his medications in combination with his condition cause him to get dizzy. [R. 56–57.] In his function report, Plaintiff

indicated that his medications cause fatigue, dizziness, drowsiness, upset stomach, back pain, and headaches. [R. 211.] In the decision, the ALJ noted that Plaintiff "was treated with a variety of medications, apparently without detrimental side effects. Those medications included aspirin, Benazepril, Coreg, Furosemide, Plavix, Nitroglycerin, Lasix, Zocor, Carvedilol, Isosorbide, Simvastatin. He was also prescribed Xanax, Trazodone, Prozac, and Vistaril." [R. 33.] A review of Plaintiff's medical history fails to establish that Plaintiff complained of any medication side effects to his treating physicians. Plaintiff complained of dizziness, fatigue, and low energy at times [R. 370, 383, 387, 411, 413, 426, 431, 460, 480, 486]; however, these symptoms were not ascribed to medications, and Plaintiff's physicians indicated he experienced no known side effects from medications [R. 441] and associated his fatigue with his depression, inactivity, and cardiomyopathy [R. 486]. Further, the record contains no evidence of any physician ever opining that the side effects from Plaintiff's medications rendered him unable to work, and Plaintiff has failed to direct the Court to any such evidence. As stated, the ALJ is not required to accept unquestioningly all alleged side effects of medications. *See Johnson*, 434 F.3d at 659. After reviewing the record, the Court concludes that the ALJ properly considered Plaintiff's medication side effects. Accordingly, the decision of the Commissioner should not be reversed on this ground.

**Weight Assigned to Medical Opinions**

Plaintiff contends the ALJ failed to assign proper weight to the opinions of Drs. Abdulla and Woriax. [Doc. 15 at 13–16.] Specifically, Plaintiff argues the ALJ considered congestive heart failure a severe impairment but failed to consider coronary artery disease

and ischemic cardiomyopathy severe impairments.[8] [*Id.* at 13.] Plaintiff also contends the

ALJ failed to adequately document his assessment of the factors required to be considered

in weighing a treating physician's opinion and failed to explain the evidentiary support for

the weight assigned to Dr. Abdulla's opinion, which is supported by Dr. Woriax's opinion.

[*Id*. at 13–16.] The Commissioner argues the ALJ assigned the proper weight to Dr.

Abdulla's opinion because, under the controlling regulations, the ALJ properly found that

Dr. Abdulla's RFC opinion was not supported by the evidence. [Doc. 16 at 10–14.]

With respect to medical source opinions regarding a claimant's impairments and

limitations, the ALJ is obligated to evaluate and weigh these medical opinions "pursuant

to the following non-exclusive list: (1) whether the physician has examined the applicant,

(2) the treatment relationship between the physician and the applicant, (3) the

supportability of the physician's opinion, (4) the consistency of the opinion with the record,

and (5) whether the physician is a specialist." *Johnson v. Barnhart*, 434 F.3d at 654 (citing

20 C.F.R. § 404.1527). ALJs typically "accord 'greater weight to the testimony of a treating

physician' because the treating physician has necessarily examined the applicant and has

---

[8]As an initial matter and as previously stated, the ALJ found coronary artery disease to be a severe impairment. [R. 28.] With respect to ischemic cardiomyopathy, to the extent the ALJ may have erred at Step 2, the error is harmless. *See Mickles v. Shalala*, 29 F.3d 918, 921 (4th Cir. 1994) (affirming denial of benefits where the ALJ erred in evaluating a claimant's pain because "he would have reached the same result notwithstanding his initial error"); *Sawyer v. Colvin*, 995 F.Supp.2d 496, 509 (D.S.C. 2014) (discussing harmless error at Step 2 stage). The determination of Plaintiff's disability did not end at Step 2. The ALJ found multiple severe impairments; thus, he continued through the sequential evaluation process and considered all impairments. *See Singleton v. Astrue*, C/A No. 9:08–1892–CMC, 2009 WL 1942191, at *3 (D.S.C. July 2, 2009) (discussing how error at Step 2 may be harmless). The ALJ acknowledged Plaintiff's ischemic cardiomyopathy diagnosis in the discussion of Plaintiff's medical history when determining Plaintiff's RFC. [R. 30, 31.]

a treatment relationship with the applicant." *Id.* (quoting *Mastro*, 270 F.3d at 178). While the ALJ may discount a treating physician's opinion if it is unsupported or inconsistent with other evidence, *Craig*, 76 F.3d at 590, the ALJ must still weigh the medical opinion based on the factors listed in 20 C.F.R. § 404.1527(c).

The opinion of a treating physician is given controlling weight only if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2). Additionally, Social Security Ruling ("SSR") 96-2p requires that an ALJ give specific reasons for the weight given to a treating physician's medical opinion:

> [A] finding that a treating source medical opinion is not well supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with the other substantial evidence in the case record means only that the opinion is not entitled to "controlling weight," not that the opinion should be rejected. Treating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. 404.1527 and 416.927. In many cases, a treating source's opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight.

1996 WL 374188, at *4 (July 2, 1996). However, not every opinion offered by a treating source is entitled to deference:

> Medical sources often offer opinions about whether an individual who has applied for title II or title XVI disability benefits is "disabled" or "unable to work," or make similar statements of opinions. In addition, they sometimes offer opinions in other work-related terms; for example, about an individual's ability to do past relevant work or any other type of work. Because these are administrative findings that may determine whether an individual is disabled, they are reserved to the Commissioner. Such opinions on these issues must not be disregarded. However, even when offered by a treating

> source, they can never be entitled to controlling weight or given
> special significance.

SSR 96-5p, 1996 WL 374183, at *5 (July 2, 1996); *see also* 20 C.F.R. §§ 404.1527(e),

416.927(e) (stating an ALJ does not have to "give any special significance to the source

of an opinion on issues reserved to the Commissioner," such as an opinion that the

claimant is disabled, the claimant's impairment or impairments meets or equals a listing,

or the claimant has a certain residual functional capacity).

### Drs. Abdulla and Woriax's Opinions

Plaintiff has a history of ischemic cardiomyopathy dating back to 2008 when he

suffered an anterior myocardial infraction. [R. 490.] Subsequently, Plaintiff underwent

coronary artery bypass surgery and was on intensive medical therapy since that time. [*Id.*]

Plaintiff was later referred by Dr. Abdulla, a cardiologist, who saw Plaintiff every six to eight

months beginning in 2008, for consideration of an automatic cardioverter/defibrillator

("AICD"). [*Id.*] On August 27, 2012, Dr. Peter Bigham successfully implanted a dual-

chamber AICD. [R. 515–16.]

Prior to the AICD implantation, Dr. Abdulla completed a Cardiac Residual Functional

Capacity Questionnaire on May 21, 2012. [R. 439–43.] Dr. Abdulla indicated Plaintiff has

Class II ischemic cardiomyopathy and coronary artery disease with fatigue but no pain.

[*Id.*] Dr. Abdulla noted Plaintiff had no marked limitation of physical activity and was

capable of low stress jobs but that Plaintiff frequently experienced cardiac symptoms that

could interfere with attention and concentration. [*Id.*] Dr. Abdulla indicated Plaintiff had no

known side effects from medications and could walk one to two city blocks without rest,

could sit one hour at a time, could stand twenty minutes at a time, would need a job that

permitted shifting positions at will, would need to take unscheduled breaks during an eight-

hour working shift, and would need to elevate his legs with prolonged sitting.  [*Id.*]  He also

indicated Plaintiff could occasionally lift and carry less than ten pounds, occasionally lift

and carry ten pounds, rarely lift and carry twenty pounds, and never lift and carry fifty

pounds and could occasionally twist, stoop, and crouch, never climb ladders, and rarely

climb stares.  [*Id.*]  Finally, Dr. Abdulla opined that Plaintiff should avoid even moderate

exposure to extreme cold, extreme heat, wetness, humidity, noise, and hazards and avoid

all exposure to fumes, odors, dusts, gases, and poor ventilation.  [*Id.*]  Dr. Abdulla thought

Plaintiff would be absent from work about three days per month.  [*Id.*]

Dr. Woriax, Plaintiff's primary care physician, noted on November 20, 2012, that

Plaintiff "has a lawyer involved to help with disability, of which I feel he will qualify with

given his profound cardiomyopathy."  [R. 551.]

### *The ALJ's Treatment of Drs. Abdulla and Woriax's Opinions*

The ALJ explained his consideration of Dr. Abdulla and Woriax's opinions as

follows:

> In arriving at the above-stated residual functional capacity, I
> considered the statement by Dr. Woriax that he felt the
> claimant would qualify for disability given his profound
> cardiomyopathy (Exhibit 18F/4).  I also considered the
> limitations set forth in the cardiac functional assessment of Dr.
> Abdulla[] (Exhibit 8F, 9F). . . . In light of the claimant's good
> results of his cardiac treatment, including medications and ICD
> implantation, and considering the lack of abnormalities on
> clinical findings, I find that the opinions of both Drs. Woriax and
> Abdulla[] are not supported by those findings.  The evidence
> demonstrates the claimant experiences some fatigue,
> occasional palpitations, shortness of breath with moderate
> exertion, and only infrequent lower extremity edema.  The
> claimant[] has no respiratory, musculoskeletal, or neurological
> abnormalities or deficits that would further interfere with his

ability to work.  In addition, Dr. Woriax is not a cardiologist and, therefore, not qualified to make such a determination about the claimant's cardiac status.  The claimant maintains the ability to shop in stores, drive a vehicle, walk for exercise, take care of his personal hygiene, and attend church services, which demonstrates the claimant is capable of functioning beyond the limitations determined by Drs. Woriax and Abdulla[].

[R. 34–35].

*Discussion*

In this case, the ALJ provided thorough reasons for discounting the opinions of Drs. Abdulla and Woriax.[9]  The ALJ cited to Dr. Abdulla 's treatment notes after implementation of the AICD, confirming that Plaintiff was doing well from a cardiac standpoint since the placement of the AICD, was physically active while performing daily activities, and walked 15 minutes at a time for two to four times a week.  [R. 32 (citing R. 573).]  Additionally, the ALJ noted that Plaintiff's "[p]hysical examinations were essentially unremarkable."  [R. 33 (citing treatment records).]  The ALJ also cited treatment notes from a January 19, 2014, follow-up appointment with Dr. Abdulla, which indicated Plaintiff was fairly stable from a cardiac standpoint.  [R. 33 (citing R. 566).]  These notes also indicate that Plaintiff denied chest pain, claudication, lower extremity edema, near syncope, palpitations, syncope, and tachycardia.  [R. 566.]  Further, the ALJ noted that Plaintiff's activities of daily living conflict with the functional limitations opined by Drs. Abdulla and Woriax.  [R. 35.]

_____

[9]With respect to Dr. Woriax's opinion, Plaintiff argues Dr. Woriax's opinion supports Dr. Abdulla's opinion.  [Doc. 15 at 13.]  Dr. Woriax noted that Plaintiff "has a lawyer involved to help with disability, of which I feel he will qualify with given his profound cardiomyopathy."  [R. 551.]  However, as stated, an ALJ need not give any special significance to the source of an opinion on issues reserved to the Commissioner, such as an opinion that a claimant is disabled. 20 C.F.R. §§ 404.1527(e), 416.927(e).  Moreover, Dr. Woriax's treatment notes after the AICD implantation consistently indicate Plaintiff was stable from a cardiac standpoint.  [R. 549, 553, 559.]

After a review of the decision and the record in this case, the undersigned finds that the ALJ properly considered and evaluated Drs. Abdulla and Woriax's opinions as part of his analysis of the overall record and evidence in this case and provided an explanation for his treatment of these opinions. The record contains substantial evidence to support the findings and conclusions of the ALJ, and Plaintiff's arguments to the contrary are without merit. *See Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990) (holding it is the responsibility of the ALJ, and not of the courts, to weigh the evidence and resolve conflicts in that evidence); *see also Carlson v. Shalala*, 999 F.2d 180, 181 (7th Cir. 1993) ("What we require is that the ALJ sufficiently articulate his assessment of the evidence to 'assure us that the ALJ considered the important evidence . . . [and to enable] us to trace the path of the ALJ's reasoning.'" (alterations in original)). Accordingly, the decision of the Commissioner should not be reversed on this ground.

**Credibility**

Plaintiff contends the ALJ failed to assess Plaintiff's credibility in accordance with SSR 96-7p arguing that there was no evidence to contradict Plaintiff's diagnoses; no evidence to contradict the side effects of his medications; and the ALJ inaccurately stated Plaintiff's activities of daily living. [Doc. 15 at 16–18.] The Commissioner contends the ALJ properly evaluated and considered Plaintiff's credibility. [Doc. 16 at 14–16.]

Determining whether an individual is disabled by pain or other symptoms is a two-step process. First, an ALJ must determine whether a claimant has an underlying impairment that has been established by objective medical evidence that would reasonably be expected to cause subjective complaints of the severity and persistence alleged. *See* 20 C.F.R. § 416.929(b); SSR 96–7p; *Craig*, 76 F.3d at 591–96 (discussing the

regulation-based two-part test for evaluating pain).  The first part of the test "does not . . . entail a determination of the intensity, persistence, or functionally limiting effect of the claimant's asserted pain." *Craig*, 76 F.3d at 594 (internal quotation omitted).  Second, and only after claimant has satisfied the threshold inquiry, the ALJ is to evaluate "the intensity and persistence of the claimant's pain, and the extent to which it affects [his] ability to work." *Id*. at 595.  This second step requires the ALJ to consider the record as a whole, including both objective and subjective evidence, and SSR 96–7p cautions that a claimant's "statements about the intensity and persistence of pain or other symptoms or about the effect the symptoms have on his or her ability to work may not be disregarded solely because they are not substantiated by objective medical evidence." SSR 96–7p.

If an ALJ rejects a claimant's testimony about his pain or physical condition, he must explain the bases for such rejection to ensure that the decision is sufficiently supported by substantial evidence.  *Hatcher v. Sec'y, Dep't of Health & Human Servs*., 898 F.2d 21, 23 (4th Cir. 1989).  "The reasons for the credibility finding must be grounded in the evidence and articulated in the determination or decision." SSR 96–7p. "The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." *Id.*

Here, after setting forth the applicable regulations, the ALJ considered Plaintiff's subjective claims under the required two-step process.  *See Craig*, 76 F.3d at 591–96.  The ALJ found Plaintiff's impairments could reasonably be expected to cause some of the symptoms he alleged, but determined that Plaintiff's statements "concerning the intensity,

persistence and limiting effects" of his symptoms were "not entirely credible to the extent

alleged." [R. 33.] Upon review of the ALJ's decision, the Court finds the ALJ adequately

explained his consideration of Plaintiff's alleged symptoms and limitations. [R. 29–34.]

The ALJ explained that Plaintiff did well after AICD implantation without complications and

denied having chest pain, dizziness, palpitations, syncope, and peripheral edema. [R.

33–34.] Although Plaintiff may disagree with the ALJ's findings, Plaintiff has failed to direct

the Court to any evidence of record not considered by the ALJ in making his credibility

determination.[10] It is not the duty of the Court to reweigh evidence or make credibility

determinations in evaluating whether a decision is supported by substantial evidence;

"[w]here conflicting evidence allows reasonable minds to differ," the court must defer to the

Commissioner's decision. *Johnson*, 434 F.3d at 653. Accordingly, the decision of the

Commissioner should not be reversed on this ground.

## CONCLUSION

Wherefore, based upon the foregoing, it is ordered that the Commissioner's decision

be AFFIRMED.

IT IS SO ORDERED.

s/Jacquelyn D. Austin
United States Magistrate Judge

August 7, 2017
Greenville, South Carolina

---

[10]Indeed, much of Plaintiff's argument with respect to the ALJ's credibility determination relates to the ALJ's failure to consider the side effects of Plaintiff's medication. As previously discussed, the Court concludes that the ALJ properly considered Plaintiff's medication side effects.